UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 24-0186 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| JOSE ISMAEL RAMIREZ-GONZALEZ | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM ORDER

The Government previously filed a motion in limine seeking to admit the testimony of Ms. Oniqua Brooks ("Brooks") and her 9-1-1 call. *See* Record Document 36. Defendant, Jose Ismael Ramirez-Gonzalez ("Ramirez-Gonzalez") did not oppose the motion so long as Brooks would be available to testify. *See* Record Document 37 at 1. Accordingly, the Court granted the motion in limine subject to it being re-urged by Ramirez-Gonzalez if Brooks was unavailable. *See id*. At the pretrial conference, the Court ordered supplemental briefing on the admissibility of the 9-1-1 call if Brooks is unavailable. *See* Record Document 41. The Government filed a brief in support of admissibility, and Ramirez-Gonzalez filed a brief opposing admissibility. *See* Record Documents 43 & 44. Therefore, the only issue before the Court is whether the statements made in Brooks's 9-1-1 call are admissible if Brooks is unavailable to testify at the trial.

For the reasons set forth below, the Court holds that the statements made in Brooks's August 4, 2024, 9-1-1 call are admissible even if Brooks is not available to testify at trial. To the extent the Government's motion in limine [Record Document 36] can be considered a new or re-urged motion on that sole issue, such motion is **GRANTED**.

**Background**

On August 4, 2024, Brooks called 9-1-1 to report a "Hispanic male" had a gun and was "harassing [her] and . . . trying to like hit [her] car and shoot [her]." Record Document 45 at 1. She told the dispatcher he had her vehicle "blocked in," he had "walked up to [her] car like twice with a pistol," and "he tapped the pistol on [her] window." *Id*. She took a picture of the man, reported what clothing he was wearing, and relayed the license plate number of his vehicle. *See generally id*. at 3-5.

On September 4, 2024, a federal grand jury indicted Ramirez-Gonzalez for re-entry of removed alien, in violation of 8 U.S.C. § 1326(a), and possession of a firearm by an alien, in violation of 18 U.S.C. § 922(g)(5)(A). *See* Record Document 12. The Government intends to offer Brooks's 9-1-1 call as evidence in its case-in-chief against Ramirez-Gonzalez. *See* Record Document 43. The Government asserts the 9-1-1 call is admissible even if Brooks is unavailable because the statements made on the call are nontestimonial and, as such, do not violate the Sixth Amendment. *See id*. The Government further asserts her 9-1-1 call is admissible under the present sense impression hearsay exception. *See id*. Ramirez-Gonzalez contends playing and/or testifying about her 9-1-1 call in Brooks's absence would violate the Sixth Amendment and/or be inadmissible under the Federal Rules of Evidence regarding hearsay or relevance. *See* Record Document 44.

**Law & Analysis**

A motion in limine is filed to "prohibit[] opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters" that are "highly prejudicial to the moving party" to avoid the jury being so prejudiced that a subsequent limiting

instruction could not cure the prejudice. *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977). "It is well settled that motions in limine are disfavored." *Auenson v. Lewis*, No. 94-CV-2734, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996). A motion in limine "excludes only clearly inadmissible evidence; therefore, evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds." *Id*. (emphasis removed).

Ramirez-Gonzalez raises three distinct bases for his challenge to the admissibility of the 9-1-1 call if Brooks is unavailable: (1) the Sixth Amendment's Confrontation Clause, (2) hearsay, and (3) Federal Rule of Evidence 403. *See* Record Document 44. The Court addresses each in turn.

### I.  Sixth Amendment's Confrontation Clause

"The Sixth Amendment's Confrontation Clause provides that, [i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 42 (2004). A declarant becomes a witness for purposes of the Confrontation Clause when they make "testimonial statements." *Davis v. Washington*, 547 U.S. 813, 821 (2006). The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53-54. But "when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony . . . the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *See Michigan v. Bryant*, 562 U.S. 344, 358-59 (2011).

3

As such, the distinction between testimonial and nontestimonial statements is critical for determining whether certain evidence raises Confrontation Clause concerns. *See United States v. Polidore*, 690 F.3d 705, 711 (5th Cir. 2012) ("The Clause's reach is limited to testimonial statements . . . ."). In general, nontestimonial statements are those "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822. By contrast, testimonial statements are those statements made "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*.

"[W]hether an emergency exists and is ongoing is a highly context-dependent inquiry." *Bryant*, 562 U.S. at 363. Nevertheless, courts have routinely found 9-1-1 calls nontestimonial because such calls are "ordinarily not designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance." *Davis*, 547 U.S. at 827 (quotation marks and internal marks omitted); *see also Polidore*, 690 F.3d at 711 ("[T]he [Supreme] Court has singled out interrogations by 911 operators as a form of interrogation that does not necessarily elicit testimonial statements."). For example, in *Davis*, the Supreme Court found the 9-1-1 call nontestimonial because the declarant "was speaking about events as they were actually happening," the call "was plainly a call for help against bona fide physical threat," and "the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past." *Davis*, 547 U.S. at 827 (emphasis removed); *see also*

4

*United States v. Proctor*, 505 F.3d 366, 371-72 (5th Cir. 2007) (affirming the admission of a 9-1-1 call where the declarant made the call immediately after the defendant fired the gun and the statements were "necessary for the police to respond appropriately to the emergency").

Here, Brooks's 9-1-1 call is nontestimonial because it was clearly made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822. Like the declarant in *Davis*, Brooks "was speaking about events as they were actually happening," her call "was plainly a call for help against bona fide physical threat," and her "statements were necessary to be able to resolve the present emergency." *Davis*, 547 U.S. at 827.

When Brooks calls the dispatcher, she informs them a man is harassing her in the parking lot and is "literally trying to like hit [her] car and shoot [her.]" Record Document 45. She keeps the dispatcher informed of the man's movements, telling them when the man is in his car and when he is walking around. *See id*. She provides information about his vehicle, his clothing, and his possession of a gun, all of which were necessary to help officers respond to the emergency. *See id*. Nothing about the call indicates Brooks called 9-1-1 to "establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. Instead, the transcript demonstrates Brooks perceives an actual physical threat to her person, makes a call to receive assistance, and relays information with the primary purpose of assisting the officers with responding to that threat. Thus,

her 9-1-1 call is nontestimonial in nature and its admission in Brooks's absence would not violate the Confrontation Clause.[1]

## II. Hearsay

The Federal Rules of Evidence provide that hearsay is generally inadmissible. *See* Fed. R. Evid. 802. Federal Rule of Evidence 803(1) provides an exception to this rule for any hearsay statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." These present sense impressions "are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803(1).

The Fifth Circuit has found that statements in a 9-1-1 call that "described and explained events that [the caller] personally witnessed and (2) [were] made . . . contemporaneously with [the caller's] observation of the events" were "admissible as present sense impression[s]." *Polidore*, 690 F.3d at 720; *see also Navarette v. California*, 572 U.S. 393, 400 (2014) (noting that 9-1-1 calls have been admitted as present sense impressions and excited utterances); *United States v. Morris*, No. 17-CR-0003-05, 2018 WL 4291754, at *2 (W.D. La. Sept. 7, 2018) (finding that statements made on a 9-1-1

---

[1] Ramirez-Gonzalez argues the 9-1-1 call should be excluded because the call is the "only" way the Government can prove beyond a reasonable doubt . . . a necessary element of proof." Record Document 44 at 4. As discussed *supra*, the Confrontation Clause is limited to testimonial statements. *See United States v. Polidore*, 690 F.3d 705, 711 (5th Cir. 2012). Because the 9-1-1 call at issue here is nontestimonial, it does not violate the Confrontation Clause. That the call may be the "only" proof of an element does not negate that the call itself is nontestimonial and thus not subject to the Confrontation Clause. Therefore, this argument is without merit.

6

call were present sense impressions); *United States v. Robinson*, 87 F.4th 658, 674 (5th Cir. 2023) (same).

Here, the statements made in Brooks's 9-1-1 call are an exception to the general rule barring hearsay. A review of the transcript demonstrates that Brooks relays events she personally witnesses "contemporaneously with [her] observation of th[ose] events." *Polidore*, 690 F.3d at 720. Thus, her statements made in the 9-1-1 call are admissible as present sense impressions.

### III. Federal Rule of Evidence 403

Pursuant to Federal Rule of Evidence 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In this context, "'[u]nfair prejudice' . . . means an undue tendency to suggest decision on an improper basis." *United States v. Jackson*, 339 F.3d 349, 356 (5th Cir. 2003). "Relevant evidence is inherently prejudicial; but it is only [u]nfair prejudice, [s]ubstantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). "[T]he application of Rule 403 must be cautious and sparing." *Id*.

Brooks's 9-1-1 call is relevant and has significant probative value. On the call, Brooks relays the events as they happen, and her call ultimately results in officers responding to the scene and arresting Ramirez-Gonzalez. The call is a significant step in the narrative leading up to Ramirez-Gonzalez's arrest and indictment. Brooks's 9-1-1 call

7

also provides additional evidence supporting that Ramirez-Gonzalez possessed a firearm as charged. Thus, the call has significant probative value in that it helps establish Ramirez-Gonzalez's conduct before officers arrived at the scene and the reason why officers arrived at the scene. Brooks's 9-1-1 call also provides other evidentiary support for the Government's case-in-chief.

Further, while Brooks's 9-1-1 call may be prejudicial, it is not unfairly so, and any such prejudice does not substantially outweigh its probative value. Ramirez-Gonzalez contends it would be unfairly prejudicial because her 9-1-1 call is the only evidence of actual possession, and he cannot cross-examine Brooks regarding that evidence if she is unavailable. *See* Record Document 44 at 4-5. The Court agrees that, in general, "[t]he more directly an out-of-court declaration implicates the defendant, the greater the danger of prejudice." *United States v. Carrillo*, 20 F.3d 617, 620 (5th Cir. 1994).

However, in the instant case, any degree of prejudice resulting from Brooks's purported identification of Ramirez-Gonzalez does not outweigh the 9-1-1 call's probative value. Notably, Brooks's 9-1-1 call does not "directly" implicate Ramirez-Gonzalez. She never identifies the individual by name, instead describing him as a "man" and a "Hispanic male" and relaying both a description of his clothing and his license plate number. Record Document 45. Even if the Court admits the 9-1-1 call, the Government will still need to establish Brooks was talking about Ramirez-Gonzalez. Although Ramirez-Gonzalez may not be able to cross-examine Brooks, he can cross-examine the officers regarding why they specifically apprehended Ramirez-Gonzalez. Additionally, despite what Ramirez-Gonzalez contends, the 9-1-1 call is not the only evidence of possession. While the 9-1-1

8

call suggests actual possession, that call is not the only evidence on which the Government intends to rely in its case-in-chief, and constructive possession is also sufficient to establish possession.

In sum, any unfair prejudice that may result from admitting Brooks's 9-1-1 call does not substantially outweigh that call's probative value. Thus, Rule 403 does not bar the admission of Brooks's 9-1-1 call.

### Conclusion

For the reasons assigned herein, the Court holds that the statements made in Brooks's August 4, 2024, 9-1-1 call are admissible even if Brooks is not available to testify at trial. To the extent the Government's motion in limine [Record Document 36] can be considered a new or re-urged motion on that sole issue, such motion is **GRANTED**.

**THUS DONE AND SIGNED** this 28th day of March, 2025.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE