## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 24-0186 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| JOSE ISMAEL RAMIREZ-GONZALEZ | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a post-verdict motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) filed by Defendant Jose Ismael Ramirez-Gonzalez ("Ramirez-Gonzalez"). *See* Record Document 70. Ramirez-Gonzalez argues the Government introduced insufficient evidence for a rational juror of fact to find him guilty as to Count Two. *See id.* The Government opposes Ramirez-Gonzalez's motion. *See* Record Document 73.

For the following reasons, **IT IS ORDERED** that Ramirez-Gonzalez's post-verdict motion for judgment of acquittal [Record Document 70] is **DENIED**.

### Background

On September 4, 2024, a federal grand jury indicted Ramirez-Gonzalez for re-entry of removed alien, in violation of 8 U.S.C. § 1326(a) ("Count One"), and possession of a firearm by an alien, in violation of 18 U.S.C. § 922(g)(5)(A) ("Count Two"). *See* Record Document 12. On April 1, 2025, Ramirez-Gonzalez proceeded to a jury trial. Prior to the trial, Ramirez-Gonzalez stipulated to all elements of Count One and to all but two elements of Count Two. *See* Record Documents 51 & 55. The only contested elements for trial were (1) whether Ramirez-Gonzalez knowingly possessed a firearm as charged

and (2) whether Ramirez-Gonzalez knew he was an alien illegally and unlawfully in the United States at the time of the charged act. *See* Record Document 66 at 7-10.

At trial, the Government introduced the August 4, 2024, 9-1-1 call of Ms. Oniqua Brooks ("Brooks"). *See* Record Document 64-1.[1] In this 9-1-1 call, Brooks informed the dispatcher that a Hispanic male was harassing her and another unidentified person in the parking lot and had tapped his pistol on her car window. She described the man's clothing and his vehicle, and she relayed the vehicle's license plate number. Brooks did not testify at trial, but Officer Gerald Thomas confirmed the authenticity of her 9-1-1 call.

Shreveport Police Department Officers Trevor Pinckley ("Officer Pinckley") and Deyonta Horton ("Officer Horton") also testified. Officer Pinckley testified the parking lot was busy because it was near several local bars, one of which was a Hispanic club. Officers Pinckley and Horton both testified they observed a black SUV stuck on a curb when they arrived. *See* Record Document 64-4. Both officers testified this vehicle matched the 9-1-1 call description, and Officer Horton confirmed the license plate number was the same.

Both officers testified a Hispanic male, who was wearing the same clothing described by Brooks, was in the driver's seat. They apprehended the driver, who both officers identified in court as Ramirez-Gonzalez. Both officers testified Ramirez-Gonzalez smelled like alcohol, and Officer Horton observed other signs of intoxication, such as

---

[1] The Government played several audio clips of the 9-1-1 call at trial, and those clips were filed as a manual attachment. *See* Record Document 64-1. The clips were played alongside a simultaneous transcript. While the transcript was not filed as an exhibit, a copy of this transcript can be seen in Record Document 45.

2

slurred speech and glossy eyes. Officer Horton testified they were able to communicate with Ramirez-Gonzalez in English at the time of his arrest. Officer Horton recovered Ramirez-Gonzalez's wallet, which purportedly contained an "ABO" card and some form of identification. *See* Record Document 65-1. Officer Horton testified Ramirez-Gonzalez was booked for not having a valid driver's license. Officer Pinckley conducted a search of the vehicle. Officer Pinckley testified it took him approximately three minutes to find the firearm and that he was using a flashlight. The firearm was located in a pocket between the console and driver's seat.

Neither Officer Pinckley nor Officer Horton knew if other individuals had been present in the vehicle prior to their arrival, but they both testified Ramirez-Gonzalez was the only person present when they arrived. Both officers further testified no other individuals came forward to either state they had been with Ramirez-Gonzalez or to claim custody or ownership over the vehicle or firearm.

Agent Tony Westendorf ("Agent Westendorf") testified he used biometrics data to confirm Ramirez-Gonzalez had been previously removed from the United States. Agent Westerndorf testified he spoke with Ramirez-Gonzalez in English during this conversation and that Ramirez-Gonzalez could speak English well. Agent Westendorf then explained documents from Ramirez-Gonzalez's "A-File." These documents were associated with Ramirez-Gonzalez's April 2018 removal and included a warrant of removal/deportation, warning to alien ordered removed or deported, and notice of intent/decision to reinstate prior order. *See* Record Document 64-3. Agent Westendorf testified these documents explained to Ramirez-Gonzalez that he had been banned from the United States for

twenty years. Agent Westendorf testified he was not present when Ramirez-Gonzalez originally would have executed these forms, and he conceded he did not personally observe Ramirez-Gonzalez sign these documents and did not know what portion of the documents had been read to or by Ramirez-Gonzalez in a language he understood. However, Agent Westendorf testified the biometrics data matched Ramirez-Gonzalez's. Agent Westendorf further testified that Ramirez-Gonzalez asked him to mail the personal belongings seized during his arrest, including the keys for the vehicle, to someone who purportedly lived with Ramirez-Gonzalez.

After the Government rested its case-in-chief on the second day of trial, Ramirez-Gonzalez orally moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c), which the Court denied. *See* Record Document 60 at 2. After the close of evidence on the same day, Ramirez-Gonzalez re-urged his oral motion for a judgment of acquittal, which the Court again denied. *See id*. The jury rendered a guilty verdict as to Counts One and Two later that day. *See id.* & Record Document 68.

On April 16, 2025, Ramirez-Gonzalez filed the instant motion for judgment of acquittal. *See* Record Document 70. In this motion, Ramirez-Gonzalez contends there was insufficient evidence for a rational juror to find the Government proved the contested elements—that is, whether he possessed the firearm and whether he knew he was an alien illegally and unlawfully present in the United States at the time—beyond a reasonable doubt. *See id.*

## Law & Analysis

### I. Federal Rule of Criminal Procedure 29

The standard for evaluating a defendant's motion for acquittal is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Sufficiency review is highly deferential to the jury's determination of guilt [, and] th[e] court may not reweigh the evidence, nor second-guess credibility choices that support the jury's verdict." *United States v. Hill*, 63 F.4th 335, 361 (5th Cir. 2023) (original marks omitted). Thus, the Court's task at this stage is to view not only the evidence but also all reasonable inferences in the light most favorable to the Government. *See United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008). "In effect, the court assumes the truth of the evidence offered by the prosecution." *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997).

In conducting this analysis, the Court reviews the sufficiency of circumstantial evidence in the same manner that it reviews the sufficiency of direct evidence. *See United States v. DeJean*, 613 F.2d 1356, 1358 (5th Cir. 1980). Moreover, "[a]ll evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is free to choose among reasonable constructions of the evidence." *United States v. Peterson*, 244 F.3d 385, 389 (5th Cir. 2001) (internal marks omitted). However, "[a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011).

## II.  Analysis

Only the guilty verdict as to Count Two, possession of a firearm by an alien, is at issue here. *See* Record Document 70. Count Two charged that, on or about August 4, 2024, Ramirez-Gonzalez knowingly possessed in and affecting interstate commerce a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(5)(A). *See* Record Document 12 at 2.

To establish Ramirez-Gonzalez's guilt as to Count Two, the Government was required to prove the following four elements beyond a reasonable doubt: (1) Ramirez-Gonzalez knowingly possessed the firearm as charged; (2) at the time of the charged act, Ramirez-Gonzalez was an alien illegally or unlawfully in the United States; (3) at the time of the charged act, Ramirez-Gonzalez knew he was an alien illegally or unlawfully in the United States; and (4) the firearm possessed traveled in or affected interstate commerce. *See United States v. Puri*, 797 F. App'x 859, 863-64 (5th Cir. 2020), *modifying* 5th Cir. PJI 2.43(D). Ramirez-Gonzalez stipulated to the second and fourth elements, which left at issue only whether he knowingly possessed the firearm as charged and whether he knew he was an alien illegally and unlawfully in the United States at the time of the charged act. Ramirez-Gonzalez maintains the Government failed to meet its burden as to these elements. The Court addresses the sufficiency of the evidence of each element in turn.

### A.  Knowingly Possessed the Firearm as Charged

As explained *supra*, the first element of Count Two requires the Government to prove beyond a reasonable doubt that Ramirez-Gonzalez knowingly possessed the firearm

6

as charged. *See Puri*, 797 F. App'x 863-64, *modifying* 5th Cir. PJI 2.43(D). Possession may be actual or constructive. *See* 5th Cir. PJI 1.33. A person is in actual possession when that person "knowingly has direct physical control over a thing, at a given time." 5th Cir. PJI 1.33. A person is in constructive possession when that person "knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons." *Id.* "Possession may be sole or joint." *Id.* Knowingly requires "that the act was done voluntarily and intentionally, not because of mistake or accident." 5th Cir. PJI 1.41.

Ramirez-Gonzalez argues the Government failed to meet its burden because it did not establish that he actually or constructively possessed the firearm. *See* Record Document 70. As to actual possession, Ramirez-Gonzalez asserts the Government's evidence failed to establish beyond a reasonable doubt that Ramirez-Gonzalez was the individual Brooks described in the 9-1-1 call. *See id.* at 2-4. Ramirez-Gonzalez attacks the credibility and reliability of Brooks's identification. *See id.* at 3-4. Ramirez-Gonzalez further argues "there were a number of people around the scene" and that "[t]here was nothing so distinct about Mr. Ramirez's clothing that would distinguish him from other Hispanic males who were downtown on that same crowded night . . . ." *Id.* at 2-3. He additionally points to the lack of testimony as to how many people were in the vehicle before the responding officers arrived. *See id.* at 3.

As to constructive possession, Ramirez-Gonzalez concedes his presence in the driver's seat of a vehicle from which a firearm was recovered would arguably demonstrate constructive possession. *Id.* at 5. However, he contends no rational juror could have

7

found constructive possession on these facts because the firearm "was concealed inside of a pocket that was positioned between the center console of the vehicle and the driver's seat. The firearm became visible only after Officer Pinckley shined a light into the pocket." *Id.* He further argues the Government did not establish who the vehicle belonged to or who regularly drove it, and he points to the lack of evidence that Ramirez-Gonzalez had personal effects inside that vehicle. *See id.* He additionally notes the lack of evidence as to how long Ramirez-Gonzalez was inside the vehicle and whether others were present. *See id.* He asserts the Government introduced no evidence that Ramirez-Gonzalez knew the gun was in the vehicle. *See id.* at 5-6. Finally, he asserts he "was very inebriated at the time." *See id.* at 6.

The Court holds the Government offered sufficient evidence for a rational juror to find beyond a reasonable doubt that Ramirez-Gonzalez possessed the firearm as charged. Officers Pinckley and Horton responded to the scene after Brooks called 9-1-1 and confirmed that the information she provided matched Ramirez-Gonzalez and the vehicle. Officer Pinckley seized a firearm from the identified vehicle, and that firearm was accessible from the driver's seat where they observed Ramirez-Gonzalez sitting. From this evidence, a rational jury could reasonably infer Ramirez-Gonzalez was the same individual who brandished the firearm at Brooks. A rational jury could also reasonably infer Ramirez-Gonzalez constructively possessed the firearm given its location and proximity to him and the fact that Ramirez-Gonzalez mailed the keys of the vehicle in which the firearm was found. Finally, although Ramirez-Gonzalez argues another person may have been present in the vehicle and could have possessed the firearm, a rational jury could reasonably infer

on these facts that Ramirez-Gonzalez jointly possessed the firearm. Viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support thereof, the Court holds there was sufficient evidence to support that Ramirez-Gonzalez knowingly possessed the firearm as charged.

### B. Knew Was an Alien Illegally and Unlawfully in the United States

As explained *supra*, the third element of Count Two requires the Government to prove beyond a reasonable doubt that Ramirez-Gonzalez knew he was an alien illegally or unlawfully in the United States at the time of the charged act. *See Puri*, 797 F. App'x 863-64, *modifying* 5th Cir. PJI 2.43(D). Ramirez-Gonzalez argues no rational juror could have found the Government proved this element beyond a reasonable doubt. *See* Record Document 70 at 6-8. He asserts that his purported signatures on the A-file documents are different and points to the lack of evidence establishing the documents were read by or to him in a language he understood. *See id.* at 6-7. Ramirez-Gonzalez additionally points to body camera footage and still photographs suggesting he possessed an identification card and an "ABO card" at the time of his arrest. *Id.* at 7.

The Court holds the Government introduced sufficient evidence for a rational juror to find beyond a reasonable doubt Ramirez-Gonzalez knew he was an alien illegally and unlawfully in the United States at the time of the charged act. Most notably, Ramirez-Gonzalez stipulated that he is a citizen of Mexico, has not obtained citizenship in the United States, was ordered deported and removed on six prior occasions, and had not received express consent from the Secretary of Homeland Security to reapply for admission. *See* Record Document 51. Thus, Ramirez-Gonzalez knew, at the time of his

9

arrest, that he was a citizen of a different country and had not received consent to reenter the United States after his previous six removals. These stipulations considered alongside the A-file documents create a reasonable inference that Ramirez-Gonzalez knew he was in the United States illegally.

Finally, the jury heard Officer Horton testify that Ramirez-Gonzalez possessed an identification card and an ABO card at the time of his arrest, and the jury heard Agent Westendorf confirm that he was not personally present when the A-file documents were presented to Ramirez-Gonzalez. Nevertheless, after hearing that evidence, the jury still found Ramirez-Gonzalez knew he was an alien illegally and unlawfully in the United States. That finding is reasonable given Ramirez-Gonzalez's stipulations and the Government's evidence. Put differently, a jury could rationally conclude beyond a reasonable doubt that Ramirez-Gonzalez knew he was present in the United States illegally because he had been formally removed from the United States six times and had not received permission to return. The Government's evidence does not need to "conclusively disprove alternatives [, and] the jury is free to choose among reasonable constructions of the evidence." *Peterson*, 244 F.3d at 389 (internal marks omitted). Viewing the evidence in the requisite light most favorable to the prosecution and drawing all reasonable inferences in support thereof, the Court hold there was sufficient evidence to support that Ramirez-Gonzalez knew he was an alien illegally and unlawfully in the United States at the time of the charged act.

The Court has found the evidence was sufficient as to both of the contested elements of Count Two. Ramirez-Gonzalez stipulated to the remaining elements of Count

Two and to Count One. Therefore, the Court finds there was sufficient evidence to support Ramirez-Gonzalez's conviction as to Counts One and Two.

## Conclusion

After a thorough review of the record, the Court finds there was substantial evidence from which a rational jury could conclude beyond a reasonable doubt that Ramirez-Gonzalez was guilty as to Counts One and Two. Accordingly, **IT IS ORDERED** that Ramirez-Gonzalez's post-verdict motion for judgment of acquittal [Record Document 70] is **DENIED**.

**THUS DONE AND SIGNED** this 1st day of July, 2025.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE